IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MARLIN E. JONES, | ) | |
| | ) | |
| Plaintiff, | ) | 4:05cv3071 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| CITY OF NORTH PLATTE, et al., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the following pending motions: (1) filing no. 32, the Motion to Dismiss Plaintiff's First Claim or Cause of Action filed by defendants-City of North Platte, Nebraska, North Platte Chief of Police Martin Gutschenritter, and City police officer Rick Ryan; (2) filing no. 34, a letter docketed as a Motion for Ruling on Count I of the complaint, as amended, filed by the plaintiff, Marlin E. Jones; (3) filing no. 38, the Motion for Summary Judgment (on Count II of the complaint, as amended) filed by the City of North Platte and Debra Morgan, Executive Director of the North Platte Housing Authority; (4) filing no. 44, the plaintiff's Motion in Opposition to Summary Judgment (on Count II); (5) filing no. 45, the plaintiff's Motion for Summary Judgment (on Count II); (6) filing no. 47, the plaintiff's letter docketed as a Motion for Information; (7) filing no. 49, the plaintiff's letter docketed as a Motion to Submit Further Evidence; and (8) filing no. 50, the defendants' Objection to filing no. 49 and Motion to Strike.

## Count I

From the outset of this case, the plaintiff has asserted two civil rights claims pursuant to 42 U.S.C. § 1983. In his first claim, entitled "Obstruction of Justice," the plaintiff initially sought relief from the City of North Platte, the Chief of Police, and a police

officer, and, in his second claim, entitled "Discrimination," the plaintiff sought relief from the City and Debra Morgan, Director of the North Platte Housing Authority.  The plaintiff later amended his complaint (filing no. 22) to add a new defendant to Count I, Jeanne Hinrich.

The plaintiff asserts the following theory of recovery in Count I, as amended:  An intruder entered the plaintiff's home on June 4, 2004.  The plaintiff filed a criminal complaint with the North Platte Police Department and spoke with Officer Ryan.  Ryan informed the plaintiff that the police would not investigate or prosecute the plaintiff's complaint.  The plaintiff then wrote a letter to the Police Chief, who did not respond.  Thereafter, the plaintiff sent a letter to the City of North Platte claiming damages for the negligent acts and omissions of the Police Chief.  According to the plaintiff, Chief Gutschenritter has failed to train the City's police officers, particularly in regard to a City Ordinance 2-142, which imposes a duty on the Police Department to arrest all offenders and to be well versed in State law.  Also, according to the plaintiff, Jeanne Hinrich, the manager of the apartment building in which the plaintiff lived when the intruder entered, conspired with Officer Ryan, reaching an agreement that no police action would be taken against the intruder, who, allegedly, was Hinrich.

As Magistrate Judge David L. Piester noted in his Order on Initial Review, and as the defendants to Count I argue in filing no. 32, a city and a police officer have no liability under the United States Constitution for the failure of either to protect members of the public from private violence (with a partial exception for persons in custody).  The plaintiff cannot hold a private citizen or a law enforcement officer liable for the officer's failure to arrest a suspected home intruder.  The United States Supreme Court has stated that the "failure to protect an individual against private violence simply does not constitute a

2

violation of the Due Process Clause." DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 197 (1989). See also Burton v. Richmond, 276 F.3d 973, 978 (8th Cir. 2002), quoting DeShaney, 489 U.S. at 196, for the principle that the purpose of 42 U.S.C. § 1983 has always been "to protect the people from the State, not to ensure that the State protected them from each other."[1]

Insofar as the plaintiff alleges that the police, the City, or Hinrich violated state law, violations of state law do not state a claim under 42 U.S.C. § 1983. See, e.g., Bagley v. Rogerson, 5 F.3d 325, 328 (8th Cir. 1993): "[A] violation of state law, without more, does not state a claim under the federal Constitution or 42 U.S.C. § 1983." See also DeShaney, 489 U.S. at 202: "[T]he Due Process Clause of the Fourteenth Amendment ... does not transform every tort committed by a state actor into a constitutional violation."

Thus, the plaintiff's Count I ("Obstruction of Justice"), as amended, does not state a claim on which relief may be granted under federal law, and that claim is dismissed. As a result, filing no. 32, the defendants' Motion to Dismiss Plaintiff's First Claim or Cause of Action, is granted. Filing no. 34, the plaintiff's Motion for Ruling on Count I of the Amended Complaint is granted insofar as the plaintiff requests a decision, but is otherwise denied. Filing no. 49, the plaintiff's Motion to Submit Further Evidence, is granted. However, filing no. 49 makes no difference as to the viability under federal law of the plaintiff's first claim. Filing no. 50, the defendants' Objection and Motion to Strike filing no. 49, is denied. Because the plaintiff's Count I is dismissed, defendants-Martin Gutschenritter, Rick Ryan and Jeanne Hinrich are also dismissed from this litigation.

---

[1] In addition, Hinrich did not act "under color of state law," within the meaning of 42 U.S.C. § 1983, when she entered the plaintiff's apartment.

**Count II**

In Count II, entitled "Discrimination," the plaintiff states that he received a letter from defendant-Debra Morgan stating that he was eligible and "close to the top of the 'waiting list'" for admission to Autumn Park, an assisted-living public housing facility. However, when Morgan learned that the plaintiff had engaged in litigation against a former landlord, she obstructed or prevented the plaintiff's admission to Autumn Park. Thus, Morgan is alleged to have discriminated or retaliated against the plaintiff for his constitutionally protected speech. The City of North Platte is alleged to have intentionally ignored the plaintiff's complaint about Morgan's unlawful treatment of the plaintiff.

Liberally construed, Count II states claims of unlawful discrimination and retaliation[2] for the plaintiff's exercise of his rights to free speech and access to the courts. A public official may not force the plaintiff to choose between protected free expression or access to a government benefit; nor may a public official penalize the plaintiff for previous speech by withholding a public benefit. See, e.g., Cuffley v. Mickes, 208 F.3d 702, 707 (8th Cir. 2000) (citation omitted), cert. denied, 532 U.S. 903 (2001): "[E]ven though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests--especially, his interest in freedom of speech. If the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and

_____

[2]Claims of discrimination and retaliation are not identical, and the plaintiff has stated both.

4

inhibited. This would allow the government to 'produce a result which [it] could not command directly.' Such interference with constitutional rights is impermissible."

Thus, discrimination and retaliation on account of protected speech are illegal whether or not the plaintiff had a firm entitlement to the withheld benefit. See, e.g., Mosely v. Board of Educ. of City of Chicago, __ F.3d __, 2006 WL 12982 (7th Cir. Jan. 4, 2006): "[Although public school committee chairwoman and outspoken activist] Mosely may not have had a right to her unpaid position, she cannot be muzzled or denied the benefit of participating in public school governance because she engaged in constitutionally protected activity." Id. at *7.  See also Kinney v. Weaver, 367 F.3d 337, 357 (5th Cir.), cert. denied, 543 U.S. 872 (2004):  "The First Amendment shields speech 'not only [from] direct limitations ... but also [from] adverse government action against ... individual[s] because of [their speech],' including the denial of public benefits to punish individuals for their speech."  Id. at 357 (citation omitted).  Accord Brown v. Disciplinary Committee of Edgerton Volunteer Fire Dept., 97 F.3d 969 (7th Cir. 1996) (unpaid volunteer firefighter could not be penalized for criticizing fire department).  Similarly, the plaintiff cannot be denied access to a public or subsidized housing program because of his exercise of First Amendment rights.

In filing no. 38, Debra Morgan and the City of North Platte seek summary judgment on the plaintiff's Count II.  Among other issues, Morgan claims qualified immunity for the plaintiff's damages claim against her in her individual capacity.  Although the plaintiff never successfully sued Morgan in her individual capacity, Morgan has proceeded in this case as if she had been sued in both her individual and official capacities.

*Presumption of Official Capacity*

5

The complaint does not specify whether Morgan is sued in her individual capacity, official capacity, or both capacities.  In those circumstances, the law presumes that a defendant is sued *only* in his or her official capacity.  See generally <u>Johnson v. Outboard Marine Corp.</u>, 172 F.3d 531, 535 (8th Cir. 1999) (to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously say so in the pleadings).

A suit against a public employee in his or her official capacity is actually a suit against the public employer.  <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985).  Therefore, the claim against Morgan, in her official capacity, is in reality a claim against her employer, i.e., the North Platte Housing Authority ("NPHA").  See also <u>Eagle v. Morgan</u>, 88 F.3d 620, 629 n. 5 (8th Cir. 1996), *quoting* <u>Kentucky v. Graham</u>: "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the [employing] entity."

## *Qualified Immunity*

The court could allow the plaintiff to amend his complaint to allege a claim against Morgan in her individual capacity.   However, Morgan would be shielded by qualified immunity, in her individual capacity, from liability for damages to the plaintiff on Count II, for the reasons set forth below.

A government employee, sued for damages in his or her individual capacity pursuant to 42 U.S.C. § 1983, is entitled to qualified immunity unless the plaintiff shows that the actor violated a "clearly established" federal or constitutional right of the plaintiff. For a right to be considered "clearly established," the plaintiff must demonstrate that a reasonable person would have known:  (a) of the plaintiff's right and (b) that the conduct at issue violated the plaintiff's right. See <u>Anderson v. Creighton</u>, 483 U.S. 635, 639-40 (1987): "The contours of the right must be sufficiently clear that a reasonable official would

6

understand that what he is doing violates that right."  Id. at 640.  "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent."  Id. (citations omitted).

As the threshold inquiry for a summary judgment motion based on qualified immunity, the court considers whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the defendant's conduct violated a constitutional right.  Brosseau v. Haugen, 125 S.Ct. 596, 598 (2004); Craighead v. Lee, 399 F.3d 954, 961 (8th Cir. 2005).  "If those facts, once established, would not amount to a constitutional violation, the inquiry ends."  McVay ex rel. Estate of McVay v. Sisters of Mercy Health System, 399 F.3d 904, 908 (8th Cir. 2005).  See also Saucier v. Katz, 533 U.S. 194, 201 (2001) ("Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?  This must be the initial inquiry."), citing Siegert v. Gilley, 500 U.S. 226, 232 (1991).

If the plaintiff has sufficiently alleged the violation of a constitutional right, "the next inquiry 'is to ask whether the right was clearly established.'"  Frye v. Kansas City Missouri Police Dept., 375 F.3d 785, 789 (8th Cir. 2004) (citation omitted).  The Supreme Court in Hope v. Pelzer, 536 U.S. 730 (2002), explained "clearly established" law as follows.  A government employee charged with the federal criminal offense of willfully and under color of law depriving a person of constitutional rights, under 18 U.S.C. § 242, is entitled to "fair warning" that the conduct in question would deprive the victim of a constitutional right.  Id. at 739-40.  The "fair warning" requirement of 18 U.S.C. § 242 is identical to the qualified immunity standard for a civil damages claim under 42 U.S.C. § 1983.  Id. at 740-41.  Thus,

7

the "salient question" for qualified immunity is whether the state of the law when the defendant acted gave the defendant "fair warning" that his or her conduct was unconstitutional.  Id. at 741.  "If the law did not put the defendant on notice that his or her conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate."  Saucier v. Katz, 533 U.S. at 202.  Put another way, "[u]nder the doctrine of qualified immunity, 'officials are not liable for bad guesses in gray areas;  they are liable for transgressing bright lines.'"  Figg v. Schroeder, 312 F.3d 625, 636 (4th Cir. 2002) (citation omitted).

Morgan openly admits that the plaintiff was eligible for both kinds of housing assistance[3] available from the NPHA, and that by November 8, 2004, the plaintiff had risen to the top of the list for admission to Autumn Park.  However, as Morgan concedes in her Affidavit, when meeting with the plaintiff on November 8, 2004, she advised him that she had read a newspaper article about a lawsuit the plaintiff had brought against a former landlord.[4]   Morgan's concerns about the plaintiff's lawsuit against his former landlord appear to have precipitated and furnished the central, if not sole, reason for her decision, on behalf of the NPHA, to reject the plaintiff's application for housing assistance, as discussed below.

According to Morgan's Affidavit, assistance from the NPHA requires not only "eligibility," but "suitability."  The plaintiff's "suitability," according to Morgan, became an

_____

[3]The North Platte Housing Authority ("NPHA") offers low-rent housing in a public housing facility known as Autumn Park and rent supplements and other kinds of subsidies for private housing under Section 8 of the Federal Housing and Urban Development Act.

[4]The apartment complex involved was the Platteview Apartments, the same complex which is the subject of the plaintiff's claim in Count I of his complaint in this case.

issue in light of the lawsuit the plaintiff had brought against his prior landlord and the allegations in the lawsuit by the landlord against the plaintiff.  The record indicates that "suitability" criteria (such as whether a tenant "respects the rights of other tenants") are much more vague than eligibility criteria, thereby affording considerable discretion to the decisionmaker for the NPHA regarding whether or not to provide assistance to an applicant.  Morgan served as that decisionmaker.

Because of the lawsuit against the plaintiff's former landlord, Morgan decided to contact the plaintiff's prior landlords at Elms Lodge and Platteview Apartments, to determine the plaintiff's "suitability" for NPHA assistance.  Contacts with the landlords at Elms Lodge and Platteview Apartments led to plaintiff's disqualification.  The Elms Lodge landlord responded that the plaintiff owed $275 in rent, and the Platteview landlord refused to comment on any of the "suitability" questions.  On that basis, Morgan rejected the plaintiff's application for assistance.

The defendants allege that Morgan did not function as a "policy-maker."  However, it appears from the record that Morgan was the authorized and final decisionmaker regarding who received assistance from the NPHA and who, as in the plaintiff's case, did not.[5]  Even the defendants' evidence establishes that the plaintiff's litigation against his

---

[5]A local government entity may not be held liable under § 1983 "solely because it employs a tortfeasor."  Board of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997).  However, "proof that [the entity's] legislative body **or authorized decisionmaker** has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the [entity] acted culpably.  Similarly, the conclusion that the action taken or directed by the [entity] **or its authorized decisionmaker** itself violates federal law will also determine that the [entity's] action was the moving force behind the injury of which the plaintiff complains."  Id. at 405 (emphasis added).  Moreover, "a **final decisionmaker's** adoption of a course of action 'tailored to a particular situation and not intended to control decisions in later situations' may, in some circumstances, give rise to municipal liability under § 1983."  Id.

former landlord caused or substantially contributed to Morgan's characterization of the plaintiff as "unsuitable" for NPHA benefits.  Thus, the plaintiff's exercise of protected speech appears to have been a motivating factor in the denial of housing assistance by the NPHA's final decisionmaker on the subject.  The plaintiff has a viable claim against Morgan, in her official capacity, for monetary, injunctive and declaratory relief for excluding him from public housing benefits largely because of his litigation against a former landlord.

On the other hand, Morgan, in her individual capacity, is shielded by qualified immunity from liability to plaintiff for damages.  A reasonable employee in Morgan's position may not have known that she was penalizing the plaintiff for his exercise of First Amendment rights when evaluating his "suitability" for public housing.  Morgan sought the counsel of a Housing and Urban Development ("HUD") official who, according to Morgan, informed her that she "could" rely on certain allegations in the newspaper article concerning the plaintiff's lawsuit.  Those allegations, made by the defendant in the lawsuit, involved an "odor" in the bathroom of the plaintiff's Platteview apartment, as well as a "notice of housekeeping problem" and a "notice of noncompliance with lease terms."  Morgan apparently did not investigate whether all of the reported "notices" related to the same single instance of a bad odor or more than one problem.  Also, Morgan apparently accepted without question the reliability of the newspaper report and the credibility of allegations by the defendant in the plaintiff's lawsuit.

Morgan had at least a facially colorable reason for questioning the plaintiff's suitability for housing assistance.  "[The plaintiff's] burden is not easily discharged: 'That

---

at 406 (emphasis added).

10

qualified immunity protects government actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*.'" Foy v. Holston, 94 F.3d 1528, 1532 (11th Cir. 1996) (emphasis in original; citation omitted).

Qualified immunity applies to individuals, not governmental bodies.  Therefore, when a plaintiff has suffered a constitutional injury, but the individual-capacity defendant has qualified immunity because the applicable law was not clearly established in the circumstances, qualified immunity nevertheless affords no protection to the governmental entity.  See generally Szabla v. City of Brooklyn Park, 429 F.3d 1168, 1175 (8th Cir.  2005) (municipal entity that deprived the plaintiff of constitutional rights can be liable even though the officer who carried out the deprivation is entitled to qualified immunity).

### Motion for Information

In his Motion for Information (filing no. 47), the plaintiff requests instructions regarding how to appeal to the Eighth Circuit Court of Appeals.  Once a final judgment is entered in the case, the plaintiff, if he still wishes to appeal, may reassert his inquiry.  Generally, a Notice of Appeal in a case such as this must be filed within 30 calendar days of entry of final judgment.   See Fed. R. App. P. 4(a).  Filing no. 47, the plaintiff's Motion for Information, is granted to that extent.

THEREFORE, IT IS ORDERED:

1.     That filing no. 32, the Motion to Dismiss Plaintiff's First Claim or Cause of Action filed by defendants-City of North Platte, Martin Gutschenritter, and Rick Ryan, is granted;

11

2.      That filing no. 34, the Motion for Ruling on Count I of the complaint, as amended, filed by the plaintiff, Marlin E. Jones, is granted insofar as the plaintiff requests a decision, but is otherwise denied;

3.      That filing no. 38, the Motion for Summary Judgment (on Count II of the complaint, as amended) filed by the City of North Platte and Debra Morgan, is granted in part and denied in part, as follows:

a.      That any claim in Count II against Debra Morgan in her individual capacity for damages is dismissed, among other reasons, on the basis of qualified immunity; and

b.      That the plaintiff's claim in Count II against Debra Morgan in her official capacity and against the City of North Platte, for damages, injunctive and declaratory relief remains for trial;

4.      That filing no. 44, the plaintiff's Motion in Opposition to Summary Judgment (on Count II), is granted insofar as a claim against Debra Morgan in her official capacity and against the City of North Platte remains for trial, and filing no. 44 is otherwise denied;

5.      That filing no. 45, the plaintiff's Motion for Summary Judgment (on Count II), is granted insofar as a claim against Debra Morgan in her official capacity and the City of North Platte remains for trial, and filing no. 45 is otherwise denied;

6.      That filing no. 47, the plaintiff's Motion for Information, is granted insofar as set forth in this Memorandum and Order;

7.      That filing no. 49, the plaintiff's Motion to Submit Further Evidence, is granted;

8.      That filing no. 50, the defendants' Objection and Motion to Strike filing no. 49 is denied;

12

9.     That the plaintiff shall have until February 16, 2006, to file an amended complaint, if he so wishes, for the limited purpose of specifying that his request for "any further relief" in his original complaint includes injunctive and declaratory relief;

10.    That the following defendants are dismissed from this litigation:   Martin Gutschenritter, Rick Ryan and Jeanne Hinrich; and

11.    That, as cross-motions for summary judgment have already been filed in this case and resolved, no additional dispositive motions are envisioned, and Magistrate Judge F. A. Gossett may enter a final scheduling order for the progression of the remaining issues in this case to trial.

DATED this 24th day of January, 2006.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

13